942 F.2d 204
 33 Fed. R. Evid. Serv. 1535
 Catherine SCHULZ, Executrix of the Estate of Robert Schulz
(deceased), Appellant,
v.
CELOTEX CORPORATION; Keene Corporation; Owens Corning
Fiberglas Corp.; Owens Illinois, Inc.; National Gypsum;
H.K. Porter Company; Armstrong World Industries, Inc.;
Crane Packing; John Crane Houdaillie, Inc.; Flinkote
Company; Garlock, Inc.; Porter Hayden Company; Rock Wool
Manufacturing Co.; Eagle Picher Industries, Inc.; Manville
Corporation Asbestos Disease Compensation Fund.
 No. 90-1708.
 United States Court of Appeals,
Third Circuit.
 Argued June 4, 1991.
Decided Aug. 21, 1991.
 
 Robert J. Murphy (argued), Murphy, Murphy & Murphy, P.C., Philadelphia, Pa., for appellant.
 Nathan A. Schachtman and Ann E. Pehrige (argued), McCarter & English, Philadelphia, Pa., for appellee Keene Corp.
 Jonathan Wheeler (argued) and Diana L. Moro-Bishop, Wheeler & Bishop, P.C., Philadelphia, Pa., for appellee Rock Wool Mfg. Co.
 R. Bruce Morrison (argued), Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for appellee Manville Asbestos Disease Compensation Fund.
 William A. Jones, Sherr, Joffe & Zuckerman, West Conshohocken, Pa., for appellee Flinkote Co., Inc.
 Robert B. Lawler, Wilbraham & Coleman, Philadelphia, Pa., for appellees Armstrong World Ind. and Nat. Gypsum Co.
 James P. Hadden, Goldfein & Joseph, Philadelphia, Pa., for appellee Garlock, Inc.
 Before SLOVITER, Chief Judge, and GREENBERG and WEIS, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 The district court struck the testimony of an attending physician because he did not couch his diagnosis on causation in terms of reasonable medical certainty. We determine that under either the federal or state rule of evidence, the testimony in this diversity asbestos case was sufficiently definite to be admissible. Because that evidence supplied the causation link necessary to carry the plaintiff's case to the jury, the grant of a directed verdict for the defendants was erroneous and will be reversed.[1] We also conclude that the plaintiff's failure to designate parts of the record to combat the motion for summary judgment filed by one of the defendants precludes relief from that judgment.
 
 
 2
 Plaintiff's decedent, Robert Schulz, alleged that he contracted asbestosis and lung cancer as a result of exposure to asbestos products manufactured by defendants. He died after a complaint was filed in the district court, but before trial. Plaintiff continued the action on her own behalf and as representative of her husband's estate.
 
 
 3
 At trial, plaintiff produced the video-deposition testimony of Dr. Allan Freedman describing his examination and treatment of the decedent. Dr. Freedman's diagnosis was that the decedent had contracted asbestosis and that condition along with cigarette smoking caused a fatal lung cancer.
 
 
 4
 The district court granted defendants' motion to strike Dr. Freedman's testimony because he did not qualify his statements on causation in terms of reasonable medical certainty. After the physician's statements were stricken, the court directed a verdict for defendants because no evidence of causation remained in the record.
 
 
 5
 Before the trial began, Rock Wool, one of the defendants, asked for summary judgment arguing that plaintiff had not produced any evidence that the deceased had come into contact with its products. The court denied the motion, with leave to renew it at trial. Rock Wool did so, and plaintiff responded with only a general assertion that summary judgment was inappropriate. The district court granted the motion during the trial.
 
 I.
 
 6
 During his lengthy deposition, Dr. Freedman, a specialist in pulmonary disorders, detailed his training and experience in the field. There is no dispute about his qualifications as an expert.
 
 
 7
 The doctor first examined the decedent in July of 1986 and, together with other physicians in the fields of oncology, radiology, and surgery, treated Mr. Schulz until his death in 1988. In addition to observations from physical examinations, Dr. Freedman conducted tests, examined certain x-rays, and reviewed findings made by other physicians who had treated the decedent.
 
 
 8
 In explaining his interpretation of x-rays, Dr. Freedman said, "the most likely cause for that is his asbestos exposure and that most likely diagnosis for that x-ray finding would be pulmonary asbestosis." At a later point the doctor was asked, "did you have the occasion, Doctor, to come to any findings or impressions with regard to this [initial] examination, and as a result of your tests and review and analysis of the information and medical history?" The doctor replied that he informed the referring physician and the decedent of several findings: "The first conclusion was with respect to the presence of obstructive airway disease, and that would be emphysema, which I related to cigarette smoking. The second was with respect to the presence of asbestos-related pleura abnormality, and this is pleural plaques. And the third is the diagnosis of mild asbestosis."
 
 
 9
 In reviewing an x-ray taken at a later date, the doctor referred to "interstitial disease that's present," and said, "In this case, I conclude this his interstitial disease is pulmonary asbestosis."
 
 
 10
 In addition to the diagnosis of asbestosis made after the initial examination, Dr. Freedman stated that at a later date he also found "squamous cell carcinoma of the right lung involving the mediastinum." Plaintiff's counsel then asked, "And, Doctor, what is the cause of that mediastinum metastatic bronchogenic lung cancer?" Dr. Freedman responded, "His bronchogenic carcinoma was caused as a combined effect of his cigarette smoking and his asbestos exposure."
 
 
 11
 Defense counsel cross-examined the witness at length about his diagnosis, the relationship between cigarette smoking and cancer, the results of scientific studies, his x-ray interpretations and his physical findings as well as other relevant topics. On re-direct examination, plaintiff's counsel asked, "Now, doctor, you have been examined, I don't know, for a number of hours, on cross-examination. Has anything been brought to your attention that would in any way change the testimony that you have given here with regard to the cause of Mr. Schulz's lung cancer and death?" Dr. Freedman replied, "There has not."
 
 
 12
 After the deposition was presented at trial, defendants moved to strike the testimony because "[a]t no time during said deposition did Dr. Freedman state any opinion to a 'reasonable medical probability/certainty.' " In granting the motion, the district judge stated, "I think that the testimony of Dr. Allan Freedman is incompetent for its failure to meet a legal standard required of his opinion for causation purposes."
 
 
 13
 Before the trial, the court decided that the law of New Jersey would govern this diversity case. Based on that ruling, defendants rely on the teaching of New Jersey appellate courts holding that the opinion of a medical expert must state that it is based on "reasonable medical certainty." See, e.g., State v. Harvey, 121 N.J. 407, 581 A.2d 483, 495 (1990), cert. denied, --- U.S. ----, 111 S.Ct. 1336, 113 L.Ed.2d 268 (1991); Bondi v. Pole, 246 N.J.Super. 236, 587 A.2d 285, 287 (App.Div.1991); State v. Freeman, 223 N.J.Super. 92, 538 A.2d 371, 384 (App.Div.1988); Johnesee v. Stop & Shop Cos., Inc., 174 N.J.Super. 426, 416 A.2d 956, 959 (App.Div.1980).
 
 
 14
 Plaintiff contends that we should be guided by Salas by Salas v. Wang, 846 F.2d 897 (3d Cir.1988). There we held that testimony on aggregate damages by an economist was admissible in a diversity case under the Federal Rules of Evidence, although such evidence would possibly be excludable in the light of an opinion of the New Jersey Supreme Court. In that instance, we considered the federal evidentiary rule to be procedural and arguably in conflict with New Jersey law. The Federal Rules of Evidence, therefore, controlled.
 
 
 15
 As we recognized in Salas, the determination of whether a particular evidentiary ruling involves federal procedural law or state substantive law, can be difficult. Often admissibility issues overlap with substantive concerns such as standards of proof. Moreover, we must be mindful of Erie's underlying premise that a diversity case tried in federal court using its procedural rules should, nevertheless, be resolved as nearly as possible as if it were in a state courtroom. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As Justice Harlan observed in determining whether to apply a state or federal rule, it is advisable to consider whether the choice of rule "would substantially affect those primary decisions respecting human conduct which our constitutional system leaves to state regulation." Hanna v. Plumer, 380 U.S. 460, 475, 85 S.Ct. 1136, 1146, 14 L.Ed.2d 8 (1965) (Harlan, J., concurring).
 
 
 16
 An example of the overlap between procedural and evidentiary issues is presented in Herber v. Johns-Manville Corp., 785 F.2d 79, 82 (3d Cir.1986). In that case where plaintiffs sought damages for a possible future cancer, we followed New Jersey appellate opinions that held that, "a future injury to be compensable must be shown to be a reasonable medical probability." Id. Finding that to be "well-settled New Jersey policy," we concluded that plaintiffs were not entitled to recover on the claim in the absence of the required evidence. In that instance, state law affected the standard by which expert testimony was to be judged.
 
 
 17
 Having alluded to the problem, we leave it without elaboration because we decide the case on the more obvious ground that here no conflict exists between the rules in the federal system and New Jersey. The district court should have admitted Dr. Freedman's testimony regardless of which evidentiary rules applied.
 
 
 18
 State rule 56(2) is an almost verbatim copy of federal rules 702 and 703 governing the admissibility of expert testimony.[2] The state rule was adopted in 1982, but the New Jersey courts continue to cite earlier cases that require medical witnesses to state opinions with certainty in some situations.
 
 
 19
 Whether such language is required under the federal rules is not clear. See Mayhew v. Bell S.S. Co., 917 F.2d 961, 963-64 (6th Cir.1990) (expert testimony excluded because it was too speculative and doctor did not testify with any degree of certainty); Grant v. Farnsworth, 869 F.2d 1149, 1152 (8th Cir.) (chiropractor's testimony would not have assisted the jury because he could not state an opinion with a reasonable degree of medical certainty), cert. denied, --- U.S. ----, 110 S.Ct. 252, 107 L.Ed.2d 202 (1989); DaSilva v. American Brands, Inc., 845 F.2d 356, 361 (1st Cir.1988) ("While at times [the doctor] did not choose the precisely proper wording for his responses, those responses generally reflected a conclusion based on a reasonable degree of medical certainty."); cf. Guam v. Reyes, 879 F.2d 646, 649 (9th Cir.1989) (no need to decide the issue because expert testimony based on "substantive equivalent"); United States v. Cyphers, 553 F.2d 1064, 1071-72 (7th Cir.) (no requirement of reasonable scientific certainty in opinions), cert. denied, 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977).
 
 
 20
 One commentator has explained that "there is nevertheless an undercurrent that the expert in federal court express some basis for both the confidence with which his conclusion is formed, and the probability that his conclusion is accurate." Hullverson, Reasonable Degree of Medical Certainty: A Tort et a Travers, 31 St. Louis U.L.J. 577, 582 (1987). To that extent, the phrase "with a reasonable degree of medical certainty" is a useful shorthand expression that is helpful in forestalling challenges to the admissibility of expert testimony. Care must be taken, however, to see that the incantation does not become a semantic trap and the failure to voice it is not used as a basis for exclusion without analysis of the testimony itself. See LeMaire v. United States, 826 F.2d 949, 954 (10th Cir.1987) (applying state law, entire testimony examined to determine if opinion expressed with the requisite degree of certainty).
 
 
 21
 Situations in which the failure to qualify the opinion have resulted in exclusion are typically those in which the expert testimony is speculative, using such language as "possibility." State v. Harvey, 581 A.2d at 495; Mayhew v. Bell S.S., 917 F.2d at 963 (Expert testified: "suspicious that it could have been"); Grant v. Farnsworth, 869 F.2d at 1152 ("could only guess"); Kirschner v. Broadhead, 671 F.2d 1034, 1039-40 (7th Cir.1982) (possibility is not an affirmative basis for a finding of fact). Phrases like "strong possibility," or "20-80% probability," also invite speculation. Chaney v. Smithkline Beckman Corp., 764 F.2d 527, 529-30 (8th Cir.1985).
 
 
 22
 In some cases, the courts are more demanding in requiring a degree of certainty in predictions of future consequences. See Herber v. Johns-Manville Corp., 785 F.2d at 82; Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1204-05 (6th Cir.1988); Mauro v. Raymark Industries, Inc., 116 N.J. 126, 561 A.2d 257, 260-63 (1989); Ayers v. Jackson, 106 N.J. 557, 525 A.2d 287, 304-08 (1987).[3] We, however, are not faced with that situation here.
 
 
 23
 Accordingly, while the particular phrase used should not be dispositive, it may indicate the level of confidence the expert has in the expressed opinion. Perhaps nothing is absolutely certain in the field of medicine, but the intent of the law is that if a physician cannot form an opinion with sufficient certainty so as to make a medical judgment, neither can a jury use that information to reach a decision. McMahon v. Young, 442 Pa. 484, 276 A.2d 534, 535 (1971).
 
 
 24
 In an analogous context, the Advisory Committee Notes on Rule 703 point out that information from other sources including hospital records and opinions from nurses and technicians is used by doctors. "The physician makes life and death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to be sufficient for judicial purposes."
 
 
 25
 That tone is appropriate here. The expert, an attending physician, testified as to his findings as well as other supporting data and expressed his diagnosis in unequivocal terms. That diagnosis was divulged to the patient, forwarded to the other attending physicians presumably for their guidance in further treatment, and was subjected to thorough and competent cross-examination. In these circumstances, we believe that the testimony carries with it the requisite degree of certainty needed for admissibility. Of course, whether the fact finder accepts the opinions expressed is a matter that we need not consider here.
 
 
 26
 We conclude that the exclusion of Dr. Freedman's testimony was not consistent with the sound exercise of discretion. A more appropriate order would have denied the motion to strike. Because the testimony should have remained in the record, it follows that the motion for directed verdict based on the absence of proof on causation should have been denied.
 
 
 27
 Accordingly, we will vacate the judgment entered in favor of the defendants and remand for a new trial.
 
 II.
 
 28
 Plaintiff has also appealed the district court's exclusion of Mr. Schulz's death certificate. The defendants contend that the ruling was proper because the certificate did not meet the requirements of the New Jersey statute requiring that such records be prepared by a medical examiner. See N.J.Stat.Ann. § 52:17B-92.
 
 
 29
 In Pollard v. Metropolitan Life Ins. Co., 598 F.2d 1284 (3d Cir.), cert. denied, 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 171 (1979), we held that federal evidentiary rules apply to the admissibility of a death certificate in a diversity case and pointed out that scrutiny under Federal Rule of Evidence 403 may also be in order. In that case, the district judge had redacted a death certificate to exclude a notation that the death was "accidental" because he concluded that the prejudicial effect outweighed the probative value of the evidence. We concluded that the trial judge's ruling was not erroneous.
 
 
 30
 This apparently is another instance in which the federal rules and New Jersey law on the admissibility are quite similar. In Biro v. Prudential Ins. Co., 57 N.J. 204, 271 A.2d 1 (1970), the New Jersey Supreme Court approved the exclusion of a death certificate which contained statements beyond the competence of a medical examiner.
 
 
 31
 In the case at hand there is no dispute that Schulz's death was caused by cancer. The etiology of the cancer, however, is sharply disputed. The district court, consequently, refused to admit the certificate which listed asbestosis as a cause because the defense would not have the opportunity to cross-examine the physician who signed the certificate.
 
 
 32
 Because there will be a new trial, we need not decide whether the certificate was properly excludable under Federal Rule of Evidence 403, or whether it should be redacted. That we leave for further development at the next trial.
 
 III.
 
 33
 Plaintiff has also appealed the entry of summary judgment in favor of defendant Rock Wool. As noted earlier, plaintiff responded to Rock Wool's motion in the district court, but did so in a brief and conclusory fashion, stating that evidence to be presented at the trial "as well as pretrial depositions heretofore taken" would show that the decedent had been exposed to dust from the defendant's asbestos-containing products. No specific testimony was cited. On post-trial motions, however, plaintiff apparently pointed to the testimony of James Stephan, one of decedent's co-workers.
 
 
 34
 In support of its request for summary judgment, Rock Wool submitted an affidavit from its president. He averred that Rock Wool did not supply the decedent's employers any asbestos-containing products. In addition, the affidavit stated that "rock wool" is a generic term referring to a type of insulation material and that the product "Epitherm" identified by Stephan as produced by Rock Wool was, in fact, manufactured by an unrelated company.
 
 
 35
 Plaintiff could not allow such sworn statements to remain unchallenged and expect to defeat the motion for summary judgment. As we remarked in Childers v. Joseph, 842 F.2d 689, 694 (3d Cir.1988), if the moving party has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the non-moving party must specify the portions of the record that would contradict the allegations supporting the motion. The burden is on the non-moving party to search the record and detail the material controverting the moving party's position. Because plaintiff failed to meet the requirements of Federal Rule of Civil Procedure 56 as explained in Childers, the district court properly entered judgment for defendant Rock Wool.
 
 
 36
 Accordingly, the judgment in favor of Rock Wool will be affirmed. The judgment in favor of the other defendants entered pursuant to the directed verdict will be vacated and the matter remanded for a new trial. Each party to bear its own costs.
 
 
 
 [1]
 After the appeal was filed, Celotex Corporation, one of the defendants, filed a Petition in Bankruptcy under Chapter 11 and did not participate further in this case. We have determined to proceed with the appeal as to the remaining parties. See Matter of S.I. Acquisition, 817 F.2d 1142, 1147-48 (5th Cir.1987); Van Buskirk v. Carey Canadian Mines ltd., 760 F.2d 481, 486 n. 2 (3d Cir.1985); Pitts v. Unarco Industries, Inc., 698 F.2d 313, 314 (7th Cir.1983); Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 449 (3d Cir.1982)
 
 
 [2]
 "A witness qualified pursuant to Rule 19 as an expert by knowledge, skill, experience, training or education may testify in the form of opinion or otherwise as to matters requiring scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or determine a fact in issue. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." N.J.R.Evid. 56
 
 
 [3]
 For discussions of the medical certainty both in the sense of opinion admissibility as well as burden of proof concerns, see Graham, Expert Witness Testimony and the Federal Rules of Evidence: Insuring Adequate Assurance of Trustworthiness, 1986 U.Ill.L.Rev. 43; Hullverson, Reasonable Degree of Medical Certainty: A Tort et a Travers, 31 St. Louis U.L.J. 577 (1987); Klein, Expert Testimony in Pharmaceutical Product Liability Actions, 45 Food Drug Cosm.L.J. 393 (1990); Martin, The Uncertain Rule of Certainty: An Analysis and Proposal for a Federal Evidence Rule, 20 Wayne L.Rev. 781 (1974)