JORDAN, Circuit Judge,
dissenting.
I agree with the Majority that Chief Marine Science Technician Matthew Jones did not employ “reasoning to the best inference” [6] or “differential diagnosis” during his January 2007 investigation into whether oily waste was discharged from the Valparaiso Star. I also agree that the admissibility of Jones’s expert testimony on the subject turns on its reliability.[7] However, because I believe that Jones proffered reliable opinions, despite not employing the methodology that the government later attributed to his investigation, I respectfully dissent.
It is important to keep in mind what Jones brings to this case. He does not purport to be anything more than a law enforcement officer asked to provide opinions concerning a criminal investigation that he undertook. To condition the admissibility of those opinions on the scientific precision of Jones’s investigative methodology is contrary to our precedent and to logic.
Our decision in United States v. Davis, 397 F.3d 173 (3d Cir.2005), is instructive. There, two police officers witnessed shots being fired from another vehicle and gave chase. Id. at 176. Eventually, the vehicle stopped and the four occupants fled. Id. at 177. One of the occupants, Davis, pointed his firearm at an officer, and the officer shot Davis, who fell to the ground. Id. A firearm was recovered from the area where Davis fell, and money and packets of cocaine base were taken from his person. Id. Firearms were either found on, or linked to, the other occupants, and numerous packets of cocaine base were discovered in the vehicle. Id. At trial, the District Court permitted one of the offi *758 cers, Derrick Garner, a fourteen-year veteran of the police force with twelve years of experience investigating narcotics cases, to provide expert testimony that the actions of Davis and the other vehicle occupants were consistent with drug trafficking. Id. at 177,179.
Davis contended on appeal that the testimony was inadmissible because there was no scientific basis for Garner’s opinion. Id. at 178. We rejected that argument, holding that, in a case where the proposed expert is a law enforcement officer, instead of a scientist, questioning the “science” of his method — by asking whether it had been subject to scientific testing or peer review, whether it had a known or potential rate of error, or whether it was generally accepted — was a futile exercise. Id. Like the Supreme Court, we “recognized ‘that there are many different kinds of experts, and many different kinds of expertise,’ ” and that evaluating factors that speak to the scientific precision of a non-scientist’s opinion sheds no light on whether that opinion is reliable. Id. (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). Instead, we were “satisfied that ... he provided a reliable opinion based on years of experience.” Id.
As applied to the case at hand, Davis directs us to assess the reliability of Jones’s opinion by reference to his relevant experience, not by asking whether his investigative method fits the ill-advised post-hoc label that the government has applied to it. Accordingly, we must examine whether Jones’s professional experience qualifies him to render the opinions he proffered. See, e.g., Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 322-23 (3d Cir.2003) (“An expert may be generally qualified but may lack qualifications to testify outside his area of expertise.”).
Jones is a certified Foreign Vessel Inspector, who, as of May 21, 2007, had been inspecting vessels for the U.S. Coast Guard for seven years. During that time, he had conducted more than 800 inspections — inspections that required him to examine equipment and records related to oily waste management. Prior to becoming an investigator, he spent three years working as an engineer on Coast Guard cutters, where he maintained the same sort of equipment that he examined on the Valparaiso Star. He has received formal training as a Marine Science Technician, and he has attained qualifications from the Coast Guard as a Pollution Investigator, a Boarding Officer for foreign vessels, a Hull Inspector, and a Machinery Inspector.
Appellees complain that Jones lacks the usual trappings of a science scholar. Specifically, they say that “[h]e has never published any scholarly or peer[-]reviewed papers on any topic relevant to his testimony,” nor does he “possess any formal degrees” or belong to “any professional society or association that purports to have expertise in tank soundings, tank volumes, or marine engineering.” (Appellee’s Br. at 50.) Such contentions, which ignore the lack of journals and professional societies devoted to Jones’s line of work, only reinforce my belief that it is unwise to treat law enforcement officers like scientists when evaluating the reliability of their expert opinions. Besides, we have held many times over that professional experience, in lieu of formal training or education, can serve as the basis for expertise. See, e.g., Pineda v. Ford Motor Co., 520 F.3d 237, 247-49 (3d Cir.2008); Davis, 397 F.3d at 178-79; Schneider, 320 F.3d at 405-06 (3d Cir.2003).
*759 The Majority notes that only ten of the 800 vessel inspections that Jones conducted involved potential violation of the laws that appellees are accused of violating. (Maj. Op. at 754 n. 2). While that fact may well bear on the persuasive effect of Jones’s opinions, it should not render them inadmissible. As we have said before, “most arguments about an expert’s qualifications relate more to the weight to be given the expert’s testimony than to its admissibility. Thus, witnesses may be competent to testify as experts even though they may not ... be the ‘best’ qualified. Who is the ‘best’ qualified is a matter of weight upon which reasonable jurors may disagree.” Holbrook v. Lykes Bros. S.S. Co., Inc., 80 F.3d 777, 782 (3d Cir.1996).
By excluding Jones’s expert testimony, the District Court took that credibility determination from the fact-finders. While a district court enjoys wide latitude in which to make evidentiary decisions, it “must be careful not to mistake credibility questions for admissibility questions.” Kannankeril v. Terminix Int’ Inc., 128 F.3d 802, 809 (3d Cir.1997). To err in that manner, by excluding an expert opinion that meets the minimum standards of admissibility, is an abuse of discretion. See id. Because I believe that Jones’s opinions are sufficiently reliable to be admitted, I would reverse the District Court’s ruling.

. I do not mean that Jones did not use his experience and sound reasoning in reaching his conclusion, only that he did not necessarily follow a formal, scientific method.

. Under Fed. R. Ev. 702:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
From this Rule, there has been extracted "a trilogy of restrictions on expert testimony: qualification, reliability, and fit.” Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir.2003) (citation omitted).
The Supreme Court stated in Daubert v. Meirell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), that ‘‘[fit] goes primarily to relevance,” in that the testimony must ‘‘aid the jury in resolving a factual dispute.” Id. at 591, 113 S.Ct. 2786. Because the ultimate issue in this case concerns whether appellees unlawfully discharged oily waste, Jones's testimony regarding whether such discharge occurred is profoundly relevant.
As to the "qualification” prong, we have "eschewed imposing overly rigorous requirements of expertise and have been satisfied with more generalized qualifications.” In re Paoli Railroad Yard PCB Litig., 35 F.3d 717, 741 (3d Cir.1994) ("Paoli II") (citing Hammond v. Int’l Harvester Co., 691 F.2d 646, 652-53 (3d Cir.1982); Knight v. Otis Elevator Co., 596 F.2d 84, 87-88 (3d Cir.1979)). The District Court did not question whether Jones satisfied this prong, and, as a formally trained and experienced maritime inspector with seven years of experience and more than 800 vessel inspections under his belt, he surely did. Because, however, "the level of expertise may affect the reliability of the expert's opinion,” Paoli II, 35 F.3d at 741, the precise nature of Jones's qualifications are relevant to the "reliability” discussion that occupies the remainder of this dissent.