Philip J. LANNI, Plaintiff,

v.

STATE OF NEW JERSEY, et al., Defendants.

Civ. A. No. 96–3116 (AET).

United States District Court, D. New Jersey.

Jan. 16, 1998.

Linda Wong, Wong, Tsai & Fleming, P.C., Edison, NJ, for Plaintiff.

Barbara Ann Barreski, Deputy Attorney General, Attorney General of New Jersey, Trenton, NJ, for Defendants.

## MEMORANDUM OPINION

HUGHES, United States Magistrate Judge.

This matter comes before the Court upon competing *in limine* motions. The parties oppose each other's motions. The Court reviewed the written submissions and considered the matter pursuant to *FED.R.CIV.P.* 78.

For the reasons that follow, Plaintiff's motion is granted, in part and denied, in part, and Defendants' motion is granted, in part and denied, in part.

## I. *BACKGROUND*

Plaintiff claims that he is a qualified person with a disability under 42 U.S.C.A. § 12101 *et seq.*, the Americans with Disabilities Act ("ADA"), and a handicapped person under N.J.S.A. § 10:5–1, *et seq.*, the New Jersey Law Against Discrimination ("LAD"). He suffers from dyslexia, dyscalculia, dysnomia and other neurological impairments. These disabilities affect, among other things, Plaintiff's visual-motor coordination, psychomotor speed, visual/spatial reasoning and problem solving. As a result, Plaintiff has a weakness in receptive speech which affects his memory and ability to derive meaning from spoken language.

In October 1990, the State of New Jersey, Department of Environmental Protection, Division of Fish, Game and Wildlife ("DEP"), hired Plaintiff as a communications officer. Plaintiff was a radio dispatcher at the Central Regional Office ("CRO"), also known as the Assunpink Wildlife Management Area in Robbinsville, New Jersey. The CRO is the reporting office for Conservation Officers assigned to the central portion of the state. Plaintiff's co-workers were conservation officers who often carried firearms and other weapons.

John Hedden was Captain in charge of the CRO from about 1984 to 1994. As such, Mr. Hedden was Plaintiff's immediate supervisor. Lieutenant Michael Boyle is the Training Officer for the Bureau. His office is at the CRO, but he is frequently out of the office on training missions. Mark Doblebower was a Conservation Officer before his promotion to lieutenant in 1992 or 1993.

Plaintiff's primary duties as a Radio Dispatcher were to respond to incoming telephone radio calls from Conservation Officers, other employees and the public, to dispatch officers to various locations, and to relay messages to and from officers. Also, his duties included filing, filling out forms and other clerical tasks. Plaintiff was required to write complaints and record incoming phone calls in a log book kept at the facility.

In the original action, Plaintiff brought suit against the State of New Jersey, DEP, Commissioner Robert Shinn, Lieutenant Boyle, Martin Morales, Brian Herrighty, Mr. Hedden, Mr. Doblebower, Gregory Huljack, Robert Winkel and Carol Lake. Plaintiff alleges that Defendants discriminated against him because of his disability. He claims that Defendants created a hostile work environment, that Defendants retaliated against him, that Defendants failed to accommodate his alleged disability, and that Defendants committed various torts against him.

Defendants filed a motion for summary judgment on all counts of the Complaint and Plaintiff filed a cross-motion for summary judgment. On December 3, 1997, the District Judge granted Defendants' motion, in part and denied it, in part, and denied Plaintiff's cross-motion. The only remaining claims are Plaintiff's claims of disability discrimination against the DEP, Mr. Hedden, Mr. Boyle and Mr. Doblebower, and his punitive damage claims against DEP. Currently before the Court are the parties' competing *in limine* motions.

## II. *IN LIMINE MOTIONS*

### A. *Plaintiff's In Limine Motions*

#### 1. *Preclude Expert Testimony by Dr. Michael Welner*

Defendants may offer Dr. Welner to testify about Plaintiff's learning disabilities. Plain-

tiff argues that Dr. Welner should not be allowed to testify because he has no specialized skill, knowledge or experience in the appropriate area of psychology, which is necessary to render an opinion on Plaintiff's learning disabilities. Moreover, Dr. Welner should not be allowed to testify because he violated the professional ethical standards governing licensed physicians while obtaining information regarding Plaintiff's psychological history. Defendants argue that Dr. Welner should be allowed to testify because he is qualified as an expert and because Plaintiff waived his right to challenge Dr. Welner based upon any conduct during Plaintiff's examination.

### 2. Preclude Testimony by Defendants' Wives

Plaintiff argues that Jane Bunting, Hilary Herrighty, Susan Morales, Peggy Doblebower and Andrea Leonard, who are all married to Defendants or other DEP employees, should not be allowed to testify because they have no personal knowledge of any relevant events. Defendants argue that these witnesses have personal knowledge of specific and relevant facts.

### 3. Preclude Testimony by Plaintiff's Former Wives/Divorce Complaints

Plaintiff argues that Grace Kelly Lanni Steinberg and Joanna Peitraszewska, Plaintiff's former wives, should not be allowed to testify because they have no personal knowledge of relevant facts, and any other testimony they may offer will be substantially more prejudicial than probative. Defendants argue that these witnesses have personal knowledge of facts relevant to whether Defendants caused Plaintiff's emotional damages.

### B. Defendants' In Limine Motions

### 1. Preclude Testimony by Other DEP Employees

Defendants argue that Jay Roberts, Kenneth Kroeze, John Mihatov and Annette Baker should not be allowed to testify because their deposition testimony shows that they have no personal knowledge of relevant facts, or in the alternative, that their testimony will be unfairly prejudicial and confusing to the jury. Plaintiff argues that these witnesses should be allowed to testify because they observed the harassing and discriminatory conduct against Plaintiff, and the hostile work environment at the DEP. Also, the witnesses' observations of Plaintiff at work may be probative on the issue of Plaintiff's damages.

### 2. Preclude Testimony About Magazine Subscriptions

Defendants argue that testimony about gun and gardening catalogs and/or magazines sent to Plaintiff's home, addressed to "Phyllis Lanni," should be precluded because there is no direct evidence that any Defendant sent them, or caused them to be sent. Furthermore, investigation revealed that the name on the registration card for the gardening magazine was not that of any of the defendants, and that the address for the person on that card is in Las Vegas, Nevada. As a result, Defendants argue that this testimony will be unfairly prejudicial and should be precluded. Plaintiff argues that, in conjunction with other evidence, it is reasonable to infer that Defendants sent the catalogs and magazines, and the danger of prejudice from that evidence will not substantially outweigh its probative value.

### 3. Preclude Testimony About Disciplinary Actions

Finally, Defendants argue that testimony regarding disciplinary actions against Defendants' witnesses Gregory Huljack and Brian Herrighty should be excluded because they are irrelevant to Plaintiff's claim and are remote in time. As a result, this testimony will be unfairly prejudicial. Plaintiff argues that the disciplinary actions are relevant and probative of Defendants' disregard for standard operating procedure and their acquiescence to the hostile work environment at the DEP.

## III. DISCUSSION

### A. Expert Testimony

The Federal Rules of Evidence provide for the presentation of testimony through expert witnesses, as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

FED.R.EVID. 702. Such an expert witness is one "who has been retained or specially employed by another party in anticipation of litigation or preparation for trial ..." FED. R.CIV.P. 26(b)(4)(B).

■ The standard to use in applying Rule 702 was set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Essentially, Rule 702 has three major requirements: (1) the witness must be qualified as an expert; (2) the expert must testify to scientific, technical or specialized knowledge; and (3) the expert testimony must assist the trier of fact. *Daubert*, 509 U.S. at 587–91, 113 S.Ct. at 2794–95; *U.S. v. Velasquez*, 64 F.3d 844, 849 (3d Cir.1995); *In re Paoli R.R. Yard PCB Litigation ("Paoli II")*, 35 F.3d 717, 741–42 (3d Cir.1994), *cert. denied*, 513 U.S. 1190, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995).

With respect to the first requirement, the *Paoli II* Court spoke to the liberality of Rule 702, noting that "a broad range of knowledge, skills, and training qualify an expert and as such," found that " [w]e have eschewed imposing overly rigorous requirements of expertise and have been satisfied with more generalized qualifications." 35 F.3d at 741.

The second requirement of Rule 702, that the expert testify as to scientific, technical or other specialized knowledge, "is intended to ensure the reliability or trustworthiness of the expert's testimony." *Velasquez*, 64 F.3d at 849; *Daubert*, 509 U.S. at 587–91, 113 S.Ct. at 2794–95. To ensure reliability, the trial judge acts as a "gatekeeper." In *Paoli II*, the Court required "the judge to conduct preliminary factfinding, to make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid,' and thus enable[ ] the judge to exclude evidence presented in plaintiffs' prima facie case." 35 F.3d at 743; *see also*

*Velasquez*, 64 F.3d at 844 (indicating that "there must be a valid connection between the expertise in question and the inquiry being made in the case") (citing *Paoli II*, 35 F.3d at 743).

In the final analysis, however, "[t]he touchstone of Rule 702 ... is the helpfulness of the expert testimony, *i.e.*, whether it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *United States v. Downing*, 753 F.2d 1224, 1235 (3d Cir.1985) (quoting FED.R.EVID. 702).

The *Daubert* standard clearly applies to scientific expert testimony. *Paoli II*, 35 F.3d at 741. Whether *Daubert* applies to cases outside the scope of scientific evidence was considered by the Third Circuit Court of Appeals in *Velasquez*, 64 F.3d at 850. In *Velasquez*, the Court indicated that whether *Daubert* applies to non-scientific testimony is still an open question. *Id.* However, the *Velasquez* Court, "in an exercise of caution," reviewed the expert testimony of handwriting specialists under the *Daubert* standard, and in doing so, noted that applying *Daubert* would help assist the Court in its consideration of the expertise in question. *Id.*

Moreover, "[t]he Federal Rules of Evidence embody a 'strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact. Rule 702, which governs the admissibility of expert testimony, specifically embraces this policy' and has a liberal policy of admissibility." *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 780 (3d Cir.1996) (citations omitted). Under rule 104(a), the district court makes the preliminary determination regarding the qualifications of the proposed expert and the admissibility of the expert's testimony. *Id.* at 781.

In *Holbrook*, the plaintiff brought an action against various defendants after he contracted cancer, allegedly from exposure to asbestos. *Id.* at 780. The district court excluded two of plaintiff's doctors, who specialized in internal medicine, since they were not oncologists or cancer specialists. *Id.* at 781, 783. The plaintiff's treating physician, Dr. Carpenter, relied on a pathology report in making his diagnosis. The district court

found that Dr. Carpenter "was not qualified to render a diagnosis or to discuss the pathology report because he was not a pathologist, oncologist or expert in 'definitive cancer diagnosis.'" *Id.* at 782 (citation omitted).

The Third Circuit Court of Appeals reversed the District Court. The Court held that "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook*, 80 F.3d at 782 (citing *In re Paoli R.R. Yard PCB Litigation ("Paoli I")*, 916 F.2d 829, 856 (3d Cir.1990)). The Court also held that "witnesses may be competent to testify as experts even though they may not, in the court's eyes, be the 'best' qualified. Who is 'best' qualified is a matter of weight upon which reasonable jurors may disagree." *Id.* at 782.

Recently, in *General Electric Co. v. Joiner*, — U.S. —, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), the United States Supreme Court addressed the issue of the proper standard of review of a district court's decision to admit or exclude expert scientific evidence. In *Joiner*, the plaintiff brought suit against various defendants after he contracted cancer, allegedly because his work exposed him to polychlorinated biphenyls (PCBs). *Id.* at —, 118 S.Ct. at 515–16. The District Court granted the defendants' motion for summary judgment because, inter alia, "the testimony of [the plaintiff's] experts had failed to show that there was a link between exposure to PCBs and small cell lung cancer." *Id.* at —, 118 S.Ct. at 516. The Court of Appeals for the Eleventh Circuit reversed the District Court. *Joiner v. General Electric Co.*, 78 F.3d 524 (1996)). The Court of Appeals held that " '[b]ecause the Federal Rules of Evidence governing expert testimony display a preference for admissibility, we apply a particularly stringent standard of review to the trial judge's exclusion of expert testimony.'" *Id.* (citing 78 F.3d at 529). The Court of Appeals reasoned that the district court erred because "it excluded the experts' testimony because it 'drew different conclusions from the research than did each of the experts.'" *Id.*

The Supreme Court reversed and found that "[a] Court of Appeals applying 'abuse of discretion' review to such rulings may not categorically distinguish between rulings allowing expert testimony and rulings which disallow it." *Id.* at —, 118 S.Ct. at 517 (citations omitted). Also, "[w]e likewise reject respondent's argument that because the granting of summary judgment in this case was 'outcome determinative,' it should have been subjected to a more searching standard of review." *Id.*

Essentially, the Supreme Court established an "abuse of discretion" standard of review for decisions excluding or permitting expert opinion. The Supreme Court further found that the District Court in *Joiner* did not abuse its discretion in excluding the expert testimony. *Id.* at —, 118 S.Ct. at 518–19.

### B. Relevancy—FED.R.EVID. 401 and 402

For evidence to be admissible, the proffered evidence must be relevant. *FED. R.EVID.* 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *FED.R.EVID.* 401. Whether to exclude the proffered evidence as irrelevant lies within the sound discretion of the court. *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1213 (3d Cir.1995); *Graziani v. Star C. Trucking, Inc.*, No. 94–7124, 1996 WL 79975, at 8 (E.D.Pa. Feb. 22, 1996).

### C. Probative Value versus Prejudice—FED.R.EVID. 403

A Court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *FED.R.EVID.* 403. The Court is vested with broad discretionary authority to determine the balancing issue presented by Rule 403. When conducting a Rule 403 inquiry, the Court must "balance

the probative value of and the need for the evidence against the harm likely to result from its admission." FED.R.EVID. 403, Advisory Committee Note.

For testimony to be excluded, it must be prejudicial as well as unfair. *Dollar v. Long Mfg., N.C., Inc.,* 561 F.2d 613, 618 (5th Cir. 1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). " 'Unfair prejudice' within its context means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." Notes of Advisory Committee on proposed Rules. Evidence is also considered "unfairly prejudicial" if it "appeals to the jury's sympathies, . . . or otherwise may cause a jury to base its decision on something other than the established proposition in the case." *Carter v. Hewitt,* 617 F.2d 961, 972 (3d Cir.1980). Additionally, the Court may exclude evidence when its probative value is only slight in comparison to the confusion of the issues and the misleading of the jury that may result by directing the jury's attention to purely collateral issues. *Blancha v. Raymark Indus.,* 972 F.2d 507 (3d Cir.1992); *see also, Langer v. Monarch Life Ins. Co.,* 966 F.2d 786 (3d Cir.1992).

### D. *FED.R.EVID. 611(a) and (b)*

Federal Rule of Evidence 611(a) provides that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Moreover, "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." FED.R.EVID. 611(b).

Accordingly, the trial court has unique control over the scope of examination of witnesses. It is up to the trial court to allow or disallow some areas of inquiry at trial, depending upon other evidence already presented.

### IV. *ANALYSIS*

#### A. *Plaintiff's Motions*

##### 1. *Expert Testimony by Dr. Welner*

###### a. *Dr. Welner's Lack of Expertise*

Plaintiff argues that Dr. Welner is not an expert specializing in learning disorders and disabilities and that his proposed reports are unreliable. Dr. Welner examined Plaintiff and found that he does not suffer from dyslexia, dyscalculia, dysnomia, nor any other neurological impairment, and that Plaintiff suffers from major depression, factitious disorder, and narcissistic personality disorder. Although Dr. Welner is an expert in forensic psychiatry, Plaintiff argues that he has no special training or experience that qualify him to diagnose a learning disability or neurological impairment. Also, Plaintiff claims that Dr. Welner did not administer any of the accepted psychological and/or neurological tests in his diagnosis. Essentially, Plaintiff argues that Dr. Welner did not rely on the proper criteria in making his determination that Plaintiff does not suffer from learning disabilities or neurological impairments, and that, therefore, his report is unreliable.

Defendants argue that: Dr. Welner is a medical doctor with Board Certifications in Psychiatry, Neurology and Forensic Psychiatry; Dr. Welner is on the faculty of the New York University School of Medicine and is an attending physician at Lenox Hill Hospital; and that he has written numerous publications about Psychiatry as related to employment. Moreover, Dr. Welner examined Plaintiff in order to make a forensic psychiatric evaluation of him. Dr. Welner reviewed the reports of Plaintiff's learning disabilities consultant, Ms. Sally Hindes, and concluded, inter alia, that Plaintiff's test results and his daily level of functioning demonstrate that Plaintiff does not have dyslexia. Instead, Dr. Welner opined that Plaintiff suffers from major depression, factitious disorder and narcissistic personality disorder.

According to the principles discussed in *Daubert* and *Joiner,* and, particularly, in light of *Holbrook,* Dr. Welner need not be

the *best* qualified expert in order to proffer an opinion about Plaintiff's learning disabilities. The Court finds that Dr. Welner is an expert in forensic psychiatry and is qualified to proffer an opinion about Plaintiff's learning disabilities and mental condition.

The Court has reviewed the witness' curriculum vitae and his twenty-eight page expert report. The report discusses, in detail, findings and opinions relating not only to the existence or non-existence of dyslexia, but also the Plaintiff's psychiatric condition and how it may explain, among other events, perceived mistreatment at work. The Court concludes that this testimony will not only assist the trier of fact in understanding various mental and cognitive conditions, but will also assist in sorting out issues of causation.

■ Finally, the opponent of the proposed expert testimony must demonstrate a *prima facie* case of unreliability before an evidentiary hearing is required. *See U.S. v. Quinn*, 18 F.3d 1461, 1465 (9th Cir.1994) (holding that Court has discretion to choose the best manner to determine admissibility of expert testimony); *See also Daubert*, 509 U.S. at 591–93, 113 S.Ct. at 2796. Here, in view of the Court's other findings, a full evidentiary hearing on the reliability of the expert testimony is not required by *Daubert* and would cause unnecessary expense and delay. *See* FED.R.CIV.P. 1 ("These rules ... shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.").

#### b. *Dr. Welner's Ethical Violation*

■ Plaintiff also argues that Dr. Welner violated professional ethical standards during his examination of Plaintiff. Dr. Welner hotly contests this claim. Essentially, Plaintiff claimed that Dr. Welner refused to allow Plaintiff to eat, drink or go to the bathroom during a day long examination. Dr. Welner says this claim is untrue.

Plaintiff sought to disqualify Dr. Welner once before. The Court permitted Plaintiff to conduct a hearing, where Plaintiff and the expert would testify to determine the truth of the matter. Plaintiff declined to engage in such a hearing and withdrew the particular

claim at that time. Accordingly, the Court will deny Plaintiff's motion to exclude Dr. Welner's testimony, finding that Plaintiff has waived his right to exclude this witness on this particular ground.

However, as previously discussed, the trial court has unique power, via Federal Rule of Evidence 611, to permit or preclude testimony relating to the conditions surrounding Dr. Welner's examination of Plaintiff, if it deems it a matter that will assist the jury in ascertaining the truth.

#### 2. *Testimony by Defendants' Wives*

■ Essentially, Plaintiff argues that Ms. Bunting, Ms. Herrighty, Ms. Morales, Ms. Doblebower and Ms. Leonard may not testify because their knowledge of the relevant facts is limited to what their husbands told them when they got home from work. Defendants contend that these witnesses personally observed Plaintiff interact with Defendants outside the office, testimony which may be probative of the nature of Plaintiff's relationship with Defendants.

The Court finds that the witnesses may testify about interaction between Plaintiff and Defendants that they personally observed. Such evidence may be relevant, but can only be determined by the trial judge within the context of the trial itself. Accordingly, it would be inappropriate to preclude these witnesses from testifying at this stage of the litigation. Therefore, this portion of Plaintiff's motion *in limine* is denied, without prejudice to renew at trial.

#### 3. *Testimony by Plaintiff's Former Wives/Divorce Complaint*

■ Plaintiff argues that Ms. Steinberg and Ms. Peitraszewska have no personal knowledge about relevant facts, and that their testimony will be unfairly prejudicial, cumulative and confusing to the jury. Defendants contend that Ms. Steinberg and Ms. Peitraszewska can testify about "stresses on plaintiff; plaintiff's relationship with the defendants; all matters referenced in the pleadings and discovery." Final Pretrial Order, para. 14 Fact Witnesses, Defendants Nos. 40 and 41. Defendants argue that they may testify as to interaction between Plaintiff and Defendants which they personally

observed and they may offer testimony to prove that Plaintiff's claimed emotional damages were not cause by Defendants' conduct.

Without the benefit of a more specific proffer, the Court is unable to determine the probative value of testimony from a former spouse. However, the Court finds that the prejudicial fact of divorce, through either testimony or divorce complaints, substantially outweighs any probative value and may divert the jury's attention from the actual issues. This evidence will be excluded, except for any appropriate impeachment and/or rebuttal purposes, as determined by the trial judge after the presentation of other evidence. This portion of Plaintiff's motion *in limine* is granted, in part and denied, in part.

### B. *Defendants' Motions*

#### 1. *Testimony by Other DEP Employees*

Plaintiff intends to offer testimony by other DEP employees who observed harassing and discriminatory conduct by Defendants and conduct which made up the hostile work environment, and Plaintiff's damages. Defendants argue that these witnesses have not personally observed any specific Defendant engaging in any particular harassing or discriminatory conduct. Further, Defendants argue that the witnesses' deposition testimony shows that their recollections are vague and, thus, their testimony will be speculative.

However, Plaintiff argues that Defendants isolated discrete portions of the witnesses' deposition testimony to show that they have no personal knowledge of any relevant facts and should be excluded. Moreover, Plaintiff argues that the witnesses did observe, and do recall, specific instances of harassing and discriminatory conduct by Defendants.

■ In order for a plaintiff to establish a hostile work environment under the ADA, he or she must show that: (1) the employee is a member of a protected class, (2) the employee was subjected to unwelcome harassment, (3) the harassment was based on the protected characteristic and (4) the harassment affected a term or condition of employment. *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49

(1986); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990).

"[T]estimony by employees about discriminatory actions by the defendant-employer similar to those alleged by the plaintiff [are] admissible to prove the employer's motive or intent to discriminate." *Rendine v. Pantzer,* 141 N.J. 292, 309, 661 A.2d 1202 (1995) (citing *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1156 (10th Cir.1990)). Plaintiffs may be forced to rely upon circumstantial evidence of discrimination to satisfy their prima facie case. *Conrad v. Chaco Credit Union, Inc.,* 946 F.2d 894 (6th Cir.1991). Accordingly, Courts may allow circumstantial evidence to be presented to the factfinder, recognizing that "proof of a general pattern of discrimination makes it 'more likely than not' that a particular adverse employment action was the result of a discriminatory criterion." *Id.* at 894 (citing *Lynn v. Regents of the Univ. of California,* 656 F.2d 1337, 1343 (9th Cir.1981), *cert. denied,* 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982)).

The Supreme Court of New Jersey has also held that the testimony of one's co-workers is admissible and relevant in determining "the character of the work environment and its effects on the complainant." *See Lehmann v. Toys R' Us,* 132 N.J. 587, 611, 626 A.2d 445 (1993). In *Lehmann,* the Court said that:

> In making that [prima facie] showing, the plaintiff may use evidence that other women in the workplace were sexually harassed. The plaintiff's work environment is affected not only by conduct directed at herself but also by the treatment of others. A woman's perception that her work environment is hostile to women will obviously be reinforced if she witnesses the harassment of other female workers. Therefore we hold that the plaintiff need not personally have been the target of each or any instance of offensive or harassing conduct.

*Id.* at 610–11, 626 A.2d 445.

Similarly, in *Hurley v. Atlantic City Police Dept.,* 933 F.Supp. 396 (D.N.J.1996), the Court held that evidence relating to harassment directed at women other than the plaintiff, derogatory remarks about women outside the presence of women, and incidents

prior to that identified by the statute of limitations were admissible. *Id.* at 410. The Court noted that the admissibility of this evidence was "crucial to the jury's evaluation of the work environment." *Id.* Moreover, the district court declined to adopt the defendants' position that comments and incidents that occurred outside of plaintiff's awareness should not be considered by the trier of fact. *Id.*

The Court reasoned that:

The heart of this case was the hostile work environment claim. It is a claim that is very hard for a jury to evaluate and even harder for a plaintiff to prove. It may depend a great deal, for example, on such things as nuance, motives, gestures, the way things are said, and workplace customs.... All of this evidence, while not forming a basis for liability, permitted the jury to more intelligently evaluate the evidence that did create liability. Barring the evidence would have provided the jury with an incomplete fragmented picture of the ACPD and plaintiff's life there.

*Id.* at 411. Therefore, the district court concluded that "although the defendants were prejudiced by the admission of the disputed evidence, the prejudice was not unfair and did not substantially outweigh the probative value." *Id.* at 413.

*Lehmann, Hurley, Rendine* and the other cases discussed above, persuade the Court that the other DEP employees may testify about conduct they observed which was harassing and discriminatory, even if Plaintiff did not observe it, if the other conduct is sufficiently similar to the conduct alleged by Plaintiff. Therefore, the testimony of other DEP employees about specific instances of harassing or discriminatory behavior toward Plaintiff, or other DEP employees, based on a disability, is relevant and admissible. However, some evidence proffered by Plaintiff, such as harassing and discriminatory conduct toward other employees for reasons such as race, ethnicity or sex, is not sufficiently similar to Plaintiff's case, and, thus, would be irrelevant and inadmissible.

### a. *Jay Roberts*

■ For example, Mr. Roberts observed a conversation between Mr. Boyle and Mark Chicketano. Mr. Roberts testified at deposition that:

We were doing an exercise as opposed to the typical firearms scenario where you have to shoot the target and you stand on a line and you shoot the police course. As part of the scenario you have to shoot the bad guy. You can't shoot the good guy because you would be killing an innocent person.

Anyway somebody shot the good guy by accident.

Boyle and Chicketano were discussing joking around about how the guy shot the good guy. You shot the good guy. Oh, no wait. Never mind, it's Phil Lanni. Let's pump a few more into it. Boom, boom, boom. And that was Mike Boyle making that comment.

Deposition of Jay Roberts, pp. 48–49. Such testimony is directly related to Plaintiff's claims, and, thus, is relevant and admissible.

■ However, Mr. Roberts also stated that "the Defendants were aware that I was dating a woman known to be Hispanic. As a result, Defendants made countless references to Hispanic persons including stereotypical references to socio-economic differences as well as offensive imitations of Hispanic accents in speech." Certification of Jay Roberts, para. 23. Such behavior is not sufficiently similar to the conduct Plaintiff alleges, and, thus, it is irrelevant and inadmissible.

### b. *Kenneth Kroeze*

■ Mr. Kroeze stated that "I have heard employees discuss Mr. Lanni's allegations of discrimination after he rendered a formal complaint and after he initiated this lawsuit. One comment dubbed Mr. Lanni as the 'Dyslexia Society's Poster Boy.'" Certification of Kenneth Kroeze, para. 19. Such testimony is relevant to Plaintiff's claim, and, thus, is admissible.

■ However, Mr. Kroeze also stated that:

Part of our jobs at the DEP was to periodically attend retreats with our co-workers. On one of those retreats, it was reported that some of the employees brought adult films which were shown in the evening. A female officer was present on the trip and walked in on the other officers viewing the adult films. Although Deputy Chief [Huljack] was present, the situation was not addressed and nothing was done to prevent a recurrence of this incident.

*Id.* at para. 15. Such behavior is not sufficiently similar to the conduct Plaintiff alleges, thus, it is irrelevant and inadmissible.

### c. *John Mihatov*

■ Mr. Mihatov stated that he fell and was injured during a field investigation. He sustained a fractured hand and aggravated an earlier back injury. After two months sick leave, Mr. Winkel verbally abused Mr. Mihatov and "implied that . . . my injuries were inflated or invalid and suggested that I was 'crying wolf.'" Certification of John Mihatov, para. 14. Such testimony is sufficiently similar to Plaintiff's claims, and, thus, is relevant and admissible.

■ However, Mr. Mihatov also stated that

[i]t was common knowledge that some employees in the DEP made comments which were hostile and offensive to the women who worked at the DEP. It was apparent that they felt uncomfortable at work because of these sexist comments. However, it appeared that no formal complaints were filed because these female employees feared the type of retaliation Mr. Lanni endured and did not want to jeopardize their jobs or benefits.

*Id.* at para. 29. Such behavior is not sufficiently similar to the conduct Plaintiff alleges, thus, it is irrelevant and inadmissible.

### d. *Annette Baker*

■ Finally, Ms. Baker stated that she noticed that Plaintiff spoke slowly and sometimes used incorrect words when he spoke. Plaintiff explained that he is dyslexic. Certification of Annette Baker, para. 7. Ms. Baker stated that she observed Defendants "ribbing" and joking with Plaintiff, and that such

conduct related to Plaintiff's speech difficulties. *Id.* at 4–5. Moreover, Ms. Baker stated that "[i]t was apparent from conversations between me and Mr. Lanni that he was very sensitive about his dyslexia. There were certainly times when a reasonable person enduring the same type of joking could be offended by the comments made and the tones used by some of the Defendants." Id. at 11–12. As in *Hurley,* this testimony about "nuances, motives, gestures, the way things are said," will help the jury intelligently evaluate the evidence. *Hurley,* 933 F.Supp. at 411. Thus, it is relevant and admissible.

■ However, Ms. Baker also recalls an incident in which Mr. Hedden "yelled at" Plaintiff in front of other DEP employees, and that she felt this was "inappropriate" and "bad judgment as far as supervisory skills." Deposition of Annette Baker, p. 31. This incident does not rise to the level of harassing or discriminatory conduct based on Plaintiff's disability. Therefore, such testimony is irrelevant and inadmissible.

This portion of Defendants' *in limine* motion is granted, in part and denied, in part.

### 2. *Testimony about Magazine Subscription*

■ Plaintiff alleges that Defendants sent gun and gardening catalogs and/or magazines to his home, addressed to "Phyllis Lanni," in retaliation for his complaints about the work environment at the CRO. Although Plaintiff does not know which individual defendant sent them to him, he alleges that a jury may infer that Defendants are responsible for it because they openly taunted Plaintiff at work by referring to him as "Phyllis." *See* Deposition Transcript of Michael Boyle, p. 19; Deposition Transcript of Philip Lanni, Volume II, p. 9. Plaintiff argues that any doubts that Defendants are responsible merely affect the weight of the evidence, not its admissibility.

Defendants argue that Plaintiff has no proof that any of the defendants sent the catalogs and magazines to him. Furthermore, the registration card for the gardening catalog, which bears the name and address of a person who lives in Las Vegas, Nevada

proves that someone other than a defendant or DEP employee sent them. Therefore, this testimony will waste the Court's time and confuse the jury.

The Court finds that, based on the testimony that Plaintiff's co-workers and supervisors referred to him as "Phyllis," a jury may reasonably infer that Defendants sent the catalogs and magazines to Plaintiff, addressed to "Phyllis", to harass him. The Court also finds that the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. Defense counsel may neutralize any such inference by effective cross-examination and presentation of other evidence. Finally, the Court agrees with Plaintiff that any doubts that Defendants sent the catalogs and magazines to Plaintiff's house affect the weight of the evidence, not its admissibility. This portion of Defendants' motion *in limine* is denied.

### 3. *Testimony about Disciplinary Actions*

██ Mr. Huljack was disciplined in 1978 for shooting a snow goose out of season. Mr. Herrighty was disciplined in 1983 for drinking alcohol and loafing on the job. Defendants contend that evidence of these disciplinary actions should be excluded because they are remote in time, have no probative value with regard to Plaintiff's claims of hostile work environment from 1991 to 1995, and are unfairly prejudicial.

Plaintiff argues that Defendants' history of disregard for the DEP's rules and procedures is illustrative of their subsequent disregard for their obligations to address and remedy Defendants' harassing and discriminatory conduct. Plaintiff argues that this evidence, like evidence of prior discriminatory conduct, shows that these witnesses, and presumably other defendants, disregarded standard operating procedure and acquiesced to Defendants' allegedly discriminatory conduct, and that this acquiescence fostered the hostile environment.

The authorities Plaintiff cites are not persuasive. *See e.g., Hurley,* 933 F.Supp. at 411 (in that sexual harassment case, the Court allowed evidence of the experiences of women other than the plaintiff and of the attitudes of male officers toward women general-ly, at trial, to place plaintiff's experience at the ACPD in context). The Court finds that the inference Plaintiff suggests would be unreasonable in this case because the disciplinary actions are remote in time and substance. The disciplinary actions occurred well before the complained-of conduct. Moreover, it is not reasonable to infer that, because these individuals committed these relatively minor infractions, a relatively long time ago, they would corroborate the discriminatory and harassing conduct described in the Complaint. Furthermore, any probative value of this evidence is *substantially* outweighed by its danger of unfair prejudice to Defendants.

Accordingly, this motion is granted and Plaintiff is precluded from presenting these disciplinary actions in any manner.

### V. *CONCLUSION*

For the reasons stated herein, Plaintiff's motion in limine is granted, in part and denied, in part, and Defendants' motion in limine is granted, in part and denied, in part.

An appropriate Order accompanies this Memorandum Opinion.

### ORDER

This matter having come before the Court upon Plaintiff's and Defendants' competing *in limine* motions, returnable January 5, 1998; and the parties having opposed each other's motions; and the Court having reviewed the written submissions of the parties; and the Court having considered the matter pursuant to FED.R.CIV.P. 78; and for the reasons stated in the accompanying Memorandum Opinion; and good cause having been shown;

IT IS on this 16th day of January 1998,

ORDERED that Plaintiff's *in limine* motion is granted, in part and denied, in part, as follows:

1. Plaintiff's motion to preclude expert testimony by Dr. Michael Welner is denied;

2. Plaintiff's motion to preclude testimony by Defendants' wives is denied, without prejudice;

3. Plaintiff's motion to preclude (1) testimony by his former wives and (2) the divorce complaints is granted, except as permitted by the trial judge for impeachment or rebuttal purposes; and it is

FURTHER ORDERED that Defendants' *in limine* motion is granted, in part and denied, in part, as follows:

1. Defendants' motion to preclude testimony by other DEP employees is granted, except for evidence related directly to Plaintiff's specific claim of discrimination, or sufficiently similar acts of discrimination;

2. Defendants' motion to preclude testimony about subscriptions for gun and gardening magazines and/or catalogs is denied;

3. Defendants' motion to preclude testimony about disciplinary actions against Gregory Huljack and Brian Herrighty is granted.